**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **TERRELL D. DOUGLAS,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **No: 1:26-cv-00741-PTG-IDD** |
| | ) | |
| **MANTECH INTERNATIONAL CORP., et al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANT MANTECH INTERNATIONAL CORPORATION'S**
**REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

In its Memorandum in Support of its Motion to Dismiss (Dkt. 19) ("Supporting Brief" or "Supp. Brief"), ManTech established that Plaintiff's Complaint (Dkt. 1) has not plausibly pled any of the asserted claims. Plaintiff's Opposition (Dkt. 26) ("Opposition" or "Opp.") fails to adequately rebut the arguments made in the Supporting Brief. Consequently, for the reasons stated in the Supporting Brief and those below, the Complaint should be dismissed.

**A.     To Survive Dismissal, Plaintiff is Required to Plead Factual Allegations Sufficient to Establish a Plausible Claim.**

In the Supporting Brief, ManTech relied on the well-established principles under *Twombly* and *Iqbal* that a plaintiff is required to plead factual allegations sufficient to establish a plausible claim to survive a motion to dismiss. *See, e.g., Sales v. Booz Allen & Hamilton, Inc.*, 2025 WL 242534, at *3 (E.D. Va. 2025) (Giles, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

After establishing that uncontestable principle of law, the Supporting Brief goes through each of the three claims and demonstrates that none have sufficient factual allegations to render them plausible. In his Opposition, Plaintiff repeatedly (and without basis) accuses ManTech of

"demanding" evidence and proof.[1]  ManTech has done nothing of the kind.  Nowhere does the Supporting Brief suggest that Plaintiff is required to come forward with documentary or testimonial evidence or proof at this time.

In fact, ManTech has only (correctly) stated that in order to go forward with a claim and proceed to discovery, Plaintiff is required to first provide sufficient good faith factual allegations to establish his legal claims.  Plaintiff's suggestion to the contrary is completely without merit.

**B.**      <u>**Plaintiff Has Not Stated a Claim for Race Discrimination (Count I).**</u>

As stated in the Supporting Brief, Plaintiff's race discrimination claim fails because it does not allege sufficient facts to plausibly suggest that the termination decision[2] was made *because of* his race rather than the "obvious alternative explanation" that the decisionmaker acted for ordinary business reasons.  Dkt. 19 (Supp. Brief at 3-6 *citing*, *inter alia*, *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015)).

In his Opposition, Plaintiff asserts that he has established his claim by repeatedly asserting that his shift lead made "blackface-related <u>remarks</u> and <u>gestures</u> in the workplace."  Dkt. 26 (Opp. at 1, 2, and 5) (emphasis added).  This phrase grossly mischaracterizes the actual facts (as opposed to conclusory rhetoric) asserted in the Complaint.  As an initial point, there is not a single

---

[1] *See, e.g.*, Dkt. 26 (Opp. at 4 "Defendants' comparator argument asks the Court to demand evidentiary detail"); Opp. at 5 ("Defendants' argument . . . demands proof of the precise decision-making chain"); Opp. at 6 ("Defendants' argument fails because it . . . demand[s] evidentiary proof"); Opp. at 9 ("Defendants' demand for a more detailed evidentiary chain is a discovery argument").

[2] In the Supporting Brief, ManTech noted that the decision to terminate was the only adverse action pled in the Complaint.  Dkt. 19 (Supp. Brief at 3-4).  As best as can be discerned, Plaintiff agrees with that assessment.  *See* Dkt. 26 (Opp. at 4).

"gesture"[3] (racially-related or otherwise) referenced anywhere in the Complaint; Plaintiff's continued use of that term would not appear to have a good faith basis.

Furthermore, although Plaintiff also repeatedly uses the plural term "remarks," the Complaint does not make reference to multiple statements or comments. Rather, Plaintiff's sole factual allegation of "racial animus" is that Mr. Adams (who understandably is *not* alleged to be an employee of ManTech) spoke on *one* occasion about an overseas game show non-Black contestant who used blackface to perform as Louis Armstrong, which Plaintiff subjectively interpreted as having been made "in the context that blackface is acceptable if it is not done with ill intention." Dkt. 1 (Compl. ¶ 18). On its face, this allegation does not plausibly suggest that Mr. Adams harbored any kind of racial animus – as opposed to engaging in a philosophical discussion about whether race and culture are viewed differently in other countries. Nonetheless, in any case, Mr. Adams was not the decisionmaker of the adverse action. His single comment does not suggest that the actual alleged decisionmakers – Mr. Crabtree and Ms. Montes de Oca – were somehow motivated by race when making the decision to have Plaintiff removed from the contract. *See, e.g., McCleary-Evans.*, 780 F.3d at 586; *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 198 (E.D. Va. 2010); *Blackford-Webb v. Glob. Scholars Acad.*, 2025 WL 2532793, at *8 (M.D.N.C. 2025).

The only allegation directed to the decisionmakers is that neither "conducted a thorough investigation into the underlying racist comments or Plaintiff's complaint." Dkt. 1 (Compl. ¶ 28). But there are no allegations that Mr. Crabtree or Ms. Montes de Oca even knew about Mr. Adams'

---

[3] A gesture is defined as "a movement usually of the body or limbs that expresses or emphasizes an idea, sentiment, or attitude." https://www.merriam-webster.com/dictionary/gesture. The Complaint contains no allegation whatsoever of any such movement.

comment; no allegations that they were responsible for performing an investigation;[4] and no allegations explaining in what manner the investigation was somehow insufficient.  Moreover, it is unclear how the failure to do a "thorough investigation" of a complaint regarding a stray comment made by another non-employee would somehow indicate that Mr. Crabtree or Ms. Montes de Oca were acting with racial animus when they directed that Plaintiff be removed from the contract after he had been employed for only six months.  Plaintiff's suggestion to the contrary is the type of pure speculation that is insufficient to state a plausible claim.  *See, e.g., McCleary-Evans.*, 780 F.3d at 588.

Plaintiff's Opposition and Complaint also make passing reference to non-Black employees who allegedly "received more favorable treatment."  *See* Dkt. 26 (Opp. at 4); Dkt.  1 (Compl. ¶ 31).  However, as previously noted, Plaintiff has not alleged any specific comparator that had the same titles, job responsibilities, and "engaged in the same conduct [as the plaintiff] without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Guillen v. Esper*, 2020 WL 3965007, at *11 (E.D. Va. 2020); *see also Seabrook v. Driscoll*,  148 F.4th 264 (4th Cir. 2025) (affirming dismissal of claim that referenced specific comparators but was "silent regarding their jobs, whether their roles were similar to her leadership position, and the identity of the supervisors who disciplined them.").  Consequently, Plaintiff's conclusory "comparator" allegations do not save his claim.

Similarly, Plaintiff attempts to buttress his discrimination claim with the allegation that two other African American employees were terminated the same day as him.  *See* Dkt. 1 (Compl. ¶ 27).  But, again, Plaintiff fails to connect that allegation to his own claim.  Regarding these other

---

[4] In fact, Plaintiff's Complaint suggests the opposite – that Mr. Crabtree and Ms. Montes de Oca *were not responsible* for the investigation and that Security Operations Center Lead Pamela Bentley performed the investigation and interviewed witnesses.  *See* Dkt. 1 (Compl. ¶ 22).

employees, there are no allegations establishing by which entity those other employees were employed; no allegations that would suggest they were terminated because of their race; and, most importantly, no allegations regarding *who decided* to terminate their employment. Without such information, the allegation regarding these other employees fails to make Plaintiff's claim any more plausible.

In sum, Plaintiff's discrimination claim is simply not plausible based on the facts. Count I should, therefore, be dismissed.

**C.    Plaintiff Has Not Stated a Claim for Hostile Work Environment (Count II).**

As noted in the Supporting Brief, to plead a hostile work environment claim, among other things, Plaintiff was required to "clear a high bar" and "allege sufficient facts plausibly demonstrating that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive." *High v. Wells Fargo Bank*, 2023 WL 2505540, at *8 (E.D. Va. 2023). To meet the severe or pervasive standard, "[c]ourts generally require that the offensive conduct occur on a nearly constant basis." *Leonard v. Tenet*, 2004 WL 3688406, at *9 (E.D. Va. 2004), *aff'd*, 115 F. App'x 169 (4th Cir. 2004). Moreover, increased scrutiny and criticism of an employee are not sufficient to meet the severe or pervasive test. *See, e.g., Carroll v. Amazon Data Servs., Inc.*, 2022 WL 3161895, at *6 (E.D. Va. 2022); *Gooding-Williams v. Fairfax Cnty. Sch. Bd.*, 2019 WL 3268831, at *6 (E.D. Va. 2019), *aff'd*, 825 F. App'x 147 (4th Cir. 2020).

Neither the single comment allegedly made by Mr. Adams regarding the overseas game show contestant, nor the allegations that Plaintiff was subjected to "increased scrutiny" are remotely close to meeting the "high bar" required to plead a hostile work environment claim.

Nonetheless, in his Opposition, without citing to a single case, Plaintiff simply asserts that his limited allegations have plausibly stated a claim. Dkt. 26 (Opp. at 6-7). He is incorrect.

5

Because the case law clearly establishes that a single comment and subsequent increased scrutiny are insufficient to plead a hostile work environment claim, Count II should be dismissed.

**D.      Plaintiff Has Not Stated a Claim for Retaliation (Count III).**

Plaintiff's final claim of retaliation should also be dismissed.  As an initial point, it does not appear from the face of the Complaint that Plaintiff engaged in protected activity.  Under long-standing 4th Circuit precedent, to establish that he engaged in a protected activity, a plaintiff must allege that he "(i) took some action to oppose an employment practice that [he] *subjectively* in good faith believed was unlawful, and (ii) that this belief was *objectively reasonable* in light of the facts.  *Peters v. Jenney,* 327 F.3d 307, 320-21 (4th Cir. 2003) (emphasis added); *see also Sanders v. Tikras Tech. Sol.,* 725 Fed. Appx. 228, 230-31 (4th Cir. 2018) (affirming summary judgment of retaliation claim on grounds that complaint of race discrimination not objectively reasonable).

While the Complaint plausibly asserts that Plaintiff was *subjectively* bothered by Mr. Adams' discussion of the use of blackface by a foreign game show contestant, that subjective belief does not appear to be *objectively* reasonable as there is no further allegation that Mr. Adams directed any racially discriminatory acts or conduct toward Plaintiff or any other individual.  In essence, Plaintiff would have this Court conclude that any discussion of a racially sensitive topic in the workplace is discriminatory and that therefore a complaint about such discussion is objectively reasonable.  That is not the law in the Fourth Circuit.

For example, in *Adams v. High Purity Sys., Inc.*, 2009 WL 2391939 (E.D. Va. 2009), *aff'd*, 382 Fed. Appx. 269 (4th Cir. 2010), *cert denied*, 562 U.S. 1223 (2011), the court dismissed the Plaintiff's retaliation claim as not being based on a complaint of race discrimination that was objectively reasonable.  In *Adams*, a white employee complained that he found racially offensive

a T-shirt being worn by a black co-worker, which stated "Free Jena Six".[5]  His manager, also a black employee, did not take any action in response to this complaint.  When the white employee was later terminated for other reasons, he contended that he was being subjected to retaliation for having complained about the T-shirt.  Judge Lee, in rejecting this claim, noted:

> Even if Plaintiff believed in good faith that these incidents were sufficient to create a hostile work environment, his belief was not objectively reasonable because the events in Jena, Louisiana gained nationwide attention and could therefore be expected to form the basis of workplace conversations.  Likewise, it was not objectively reasonable to believe that wearing a racially neutral T-shirt expressing one's views on such a highly publicized issue was in some way unlawful. As such, Plaintiff fails to state a claim for retaliation based on race/color.

*Id*. at *7.  Likewise, here, objectively, there is no allegation that Mr. Adams was engaging in racially offensive or hostile conduct when he was speaking to the question of whether the use of blackface could be appropriate in an "overseas game show" setting.  Consequently,  Plaintiff's retaliation claim fails because he did not engage in  objectively reasonable protected activity.

In addition, even if his complaint about the game show comment could be viewed as protected activity, Plaintiff has not pled sufficient facts to plausibly establish a causal connection between that complaint and his termination.  And, because more than two months passed between the complaint and the termination, Plaintiff cannot rely on timing alone to establish that connection.  *See* Dkt. 19 (Supp. Brief at 8-9).

In his Opposition, Plaintiff argues that when the time period exceeds two months, "intervening events" can support an inference of causation. Dkt. 26 (Opp. at 7-9 (citing *Holloway*

---

[5] As the court noted in footnote 1 of its decision: "The Jena Six were a group of six black teenagers charged with the beating of a white student at Jena High School in Jena, Louisiana. A number of race related incidents took place in Jena during the months leading up to the beating, including nooses hanging from a tree in the high school courtyard, violent confrontations between white and black youth, and destruction by fire of the main building of Jena High School."

*v. Maryland,* 32 F.4th 293 (4th Cir. 2022)).  As best as can be discerned, the intervening event that Plaintiff relies on is the amorphous allegations in Paragraph 22 of the Complaint that Mr. Adams learned of the complaint, which somehow led to other unidentified supervisors engaging in unidentified "retaliatory conduct".  *See* Dkt. 1 (Compl. ¶ 22).

However, even if these allegations were pled with more specificity, it still would not establish a causal connection – because, as previously noted, Plaintiff has not plausibly pled that either Mr. Crabtree or Ms. Montes de Oca, the decisionmakers, were aware of his complaint.  This is fatal to his claim.  *See Seabrook v. Driscoll*, 148 F.4th 264, 273 (4th Cir. 2025) ("The employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary") (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

In *Seabrook,* the Fourth Circuit affirmed the dismissal of a plaintiff's retaliation claim because she failed to adequately plead the decisionmaker had knowledge of her filing an EEO complaint.  *Id.*  In that case, the plaintiff pled an allegation that the decisionmaker was "made aware of all EEO activity within the command by virtue of his position as Command Executive Officer and Director, Services Infrastructure Core Enterprise." *Id.* (cleaned up).  Nonetheless, the Fourth Circuit found that this general allegation of knowledge was "insufficient to raise a nonspeculative inference that [the retaliator] knew about [plaintiff's] complaint."  *Id.*

In this case, Plaintiff has not pled even the type of general-speculative allegation that was deemed insufficient in *Seabrook*.  In his Opposition, Plaintiff argues that allegations establishing that the decisionmakers had knowledge of Plaintiff's complaint is an unnecessary "evidentiary detail beyond Rule 12(b)(6)." Dkt. 19 (Opp. at 8).  As is clear from *Seabrook* that is a misstatement of the law.

In order to state a retaliation claim, Plaintiff was required to specifically state allegations

8

that plausibly establish Mr. Crabtree and Ms. Montes de Oca had knowledge of his alleged protected activity. He did not do so. Consequently, the retaliation claim must be dismissed.

## IV. CONCLUSION

For the reasons stated above, each of Plaintiff's claims is flawed and should be dismissed with prejudice.

Dated: June 18, 2026                                  Respectfully submitted,

*/s/ Edward Lee Isler*
Edward Lee Isler, Va. Bar No. 27985
Micah E. Ticatch, Va. Bar No. 83351
John W. H. Harding, Va. Bar No. 87602
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com
Email: mticatch@islerdare.com
Email: jharding@islerdare.com

*Counsel for Defendant*
*ManTech International Corporation*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends notification to the following:

Andrew O. Clarke, Esq.
DISTRICT LEGAL GROUP, PLLC
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Phone: (202) 780-9144
Email: aclarke@districtlegalgroup.com

*Counsel for Plaintiff*
*Terrell D. Douglas*

Andrew K. Clark
Alexander P. Faig
HIRSCHLER FLEISCHER
1676 International Drive, Suite 1350
Tysons, Virginia 22120
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
E-mail: aclark@hirschlerlaw.com
Email: afaig@hirschlerlaw.com

Matthew C. Moschella
Luke E. Colomey
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, Massachusetts 02111
(617) 646-2000
mcmoschella@sherin.com
lecolomey@sherin.com

*Counsel for Defendant*
*ALKU Technologies, LLC*

/s/ Edward Lee Isler
Edward Lee Isler, Va. Bar No. 27985
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Phone: (703) 748-2690
Facsimile: (703) 748-2695
Email: eisler@islerdare.com

*Counsel for Defendant*
*ManTech International Corporation*

10