**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **TERRELL D. DOUGLAS,**<br><br>Plaintiff,<br><br>v.<br><br>**MANTECH INTERNATIONAL CORP.**<br>and<br>**AKLU TECHNOLOGIES, LLC**<br><br>Defendants. | Civil No. 1:26-cv-00741-PTG-IDD |

**DEFENDANT ALKU TECHNOLOGIES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## INTRODUCTION

*Plaintiff's Opposition to Defendant ALKU Technologies, LLC's Motion to Dismiss the Amended Complaint* (the "Opposition") (ECF No. 62) confirms that dismissal of Counts II, III, and IV against Defendant ALKU Technologies, LLC ("ALKU") is warranted. Plaintiff Terrell Douglas ("Plaintiff") has failed to refute that ALKU's actions were appropriate under the circumstances, has failed to allege that any action not taken by ALKU would have led to a different result, and, regardless, each of Plaintiff's claims against ALKU is fatally flawed.

## ARGUMENT

### I. The Opposition Confirms that ALKU Was Not Involved in the Alleged Discrimination or Retaliation.

Plaintiff first argues that ALKU is liable under 42 U.S.C. § 1981 for its conduct as Plaintiff's staffing employer. *See* Opposition 7-12. Plaintiff is wrong. The facts alleged in the Amended Complaint ("Amended Complaint" or "Am. Compl.") (ECF No. 40) confirm that ALKU

had no involvement in the alleged discrimination or retaliation, and thus ALKU cannot be liable under the governing law.

### A. Plaintiff's Allegations Do Not Satisfy the Relevant Standard for a Staffing Agency to Be Liable for a Client's Alleged Discrimination.

As ALKU set out in *Defendant ALKU Technologies, LLC's Memorandum in Support of Its Motion to Dismiss Plaintiff's Amended Complaint* (the "Supporting Brief") (ECF No. 47), in staffing agency cases, each of the agency and its client "only bears liability for discriminatory acts within its control." *See* Supporting Brief at 5 (citing *Bacon v. Nolte*, No. 4:19-CV-299, 2020 WL 5096515, at *1 (S.D. Ga. Aug. 27, 2020) (citing cases)). A staffing agency can be liable only (a) for its own discrimination against the employee (which Plaintiff does not allege here), or (b) if it knew or should have known of discrimination by the client (here, allegedly, ManTech) and failed to take corrective action within its control. *See* Supporting Brief at 5-6 (citing *Crump v. United States Dept. of Navy*, No. 2:13cv707, 2016 WL 901262, at *1-3 (E.D. Va. Mar. 3, 2016)).

Plaintiff argues that this standard is met here and relies heavily on EEOC Enforcement Guidance on contingent workers, which he claims "addresses this exact situation." Opposition at 7 (citing *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms*, No. 915.002, Question 8, Example 11 (Dec. 3, 1997) (the "EEOC Guidance")).[1] Plaintiff further argues that the facts here are "stronger than the EEOC's example," in which the staffing agency was found liable, because

[1] The EEOC Guidance is available at: https://www.eeoc.gov/laws/guidance/enforcement-guidance-application-eeo-laws-contingent-workers-placed-temporary (last accessed Nov. 22, 2026). The EEOC Guidance is not binding. *See Johnson v. Walmart Inc.*, No. 1:22cv353, 2022 WL 21827440, at *3 n.2 (M.D.N.C. Nov. 4, 2022). While it may be persuasive, the EEOC Guidance by its terms does not address Section 1981 claims, like Plaintiff's here. *See* EEOC Guidance, Introduction ("This Guidance addresses the application of Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the Equal Pay Act (EPA) to individuals placed in job assignments by temporary employment agencies and other staffing firms, i.e., 'contingent workers.'").

ALKU "did not even inform the client, insist on an investigation, or find Mr. Douglas another assignment." Opposition at 8. But even a cursory review of the EEOC Guidance confirms that it does not support Plaintiff's position at all.

*First*, in Example 11, a temporary receptionist complains to her agency about harassment, "and the agency informs its client of the allegation." EEOC Guidance, Question 8, Example 11. The EEOC then faults the staffing agency because "[i]nforming the client of the harassment complaint was not sufficient," and the agency "should have insisted that the client investigate the allegation of harassment and take immediate and appropriate corrective action." *Id*. That is not the situation here. As Plaintiff alleged in the Amended Complaint, when he complained to ALKU on July 11, 2024, he "requested that ALKU not communicate his complaint to ManTech because he feared further retaliation." Am. Compl. ¶ 214. Yet Plaintiff ***now*** faults ALKU for not informing ManTech. *See* Opposition at 8. The EEOC Guidance does not suggest that a staffing firm is liable for honoring the worker's own request for confidentiality, much less that it must override that request.[2] Plaintiff's response is that ALKU could have investigated "on its own" or "revisit[ed] the question with him." *Id.* at 13. But the Amended Complaint does not allege that Plaintiff ever withdrew his request before ManTech removed him. *See* Am. Compl. ¶¶ 214-230. Plaintiff further concedes that after his removal, ALKU's Senior Manager of Human Resources offered to take his report to the client. *See id.* ¶ 41. That timing reflects ALKU's respect for his wishes, not neglect.

---

[2] Indeed, Plaintiff is trying to place ALKU in a no-win situation. Had ALKU disregarded Plaintiff's request for confidentiality, he would have then complained about that fact and attempted to use it to support his claims, just as he is doing with respect to ManTech. *See* Am. Compl. ¶¶ 68-71 ("Plaintiff requested that SOC Lead Bentley keep his complaint confidential. ... Notwithstanding Plaintiff's request for confidentiality, on May 29, 2024, SOC Lead Bentley subsequently approached Co-worker John … and questioned him about Plaintiff's report"); Opposition at 11, 17.

*Second*, unlike here, Example 11 turns on what the agency *knew* about why the client acted. The client in Example 11 "refuse[d] to investigate the matter, and instead ask[ed] the agency to replace the worker with one who is not a 'troublemaker.'" EEOC Guidance, Question 8, Example 11. Nothing comparable is alleged here. The Amended Complaint alleges only that ManTech "directed ALKU to remove Plaintiff and Wedness Robinson." Am. Compl. ¶ 216. It does not allege that ManTech gave ALKU any race-based or retaliatory reason, in sharp contrast to the request in Example 11 to remove a "troublemaker" and replace her with a new worker. Courts applying the EEOC Guidance's participation standard have required *knowledge* that the client acted for discriminatory reasons. *See Nicholson v. Securitas Sec. Servs. USA, Inc.*, 830 F.3d 186, 190 (5th Cir. 2016) ("[A] staffing firm participates in discrimination by honoring a client's discriminatory transfer request only if it knows or should have known the client's reasons were discriminatory."); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 938 (D.S.C. 1997) ("It would be grossly inequitable to hold [a staffing] agency liable for discrimination that it was not aware of, had no reason to know was taking place, and of which it had no control"). Plaintiff's allegation that ALKU knew "[u]pon information and belief" that he and Ms. Robinson had "raised or discussed concerns" about workplace conduct, Am. Compl. ¶ 218, does not plausibly allege that ALKU knew ManTech's directive was itself motivated by race or retaliation.

*Third*, the EEOC Guidance says the agency "participated in its client's discriminatory misconduct when it acceded to the client's request to replace the worker with one who was not a 'troublemaker.'" EEOC Guidance, Question 8, Example 11. But the Amended Complaint does not allege that ALKU supplied a replacement for Plaintiff. ALKU's alleged "participation" consists of notifying Plaintiff of ManTech's decision, collecting his badge and credentials, and ending the assignment. *See* Am. Compl. ¶¶ 120-22, 222. Those are simply the results of a removal that, as

Plaintiff concedes, ALKU "could not independently compel ManTech" to reverse. *Id.* ¶ 223. That is not "participation" as described in the EEOC Guidance.

*Fourth*, in a different example in the EEOC Guidance (Example 12), the client insists that the staffing firm remove a worker for a reason that is discriminatory on its face (i.e., the client wants a worker with AIDS removed because its employees "fear infection"). EEOC Guidance, Question 8, Example 12. "The staffing firm has no choice but to remove the worker," but is found not liable because it does not send a replacement worker "because to do so would constitute acquiescence in the discrimination." *Id.* Thus, the EEOC Guidance looks at whether the staffing firm took measures "within its control." *Id.* Here, Plaintiff instructed ALKU not to involve ManTech, ManTech did not offer a discriminatory reason for Plaintiff's removal, ALKU did not send a replacement, and Plaintiff has conceded that ALKU had "no other assignment available" at which to place him as an alternative. Am. Compl. ¶¶ 118, 214, 216, 220-24. Under these facts, ALKU did not participate in any alleged discrimination by ManTech.

**B. Plaintiff Distorts the Amended Complaint in Arguing Control.**

Plaintiff asserts that "ALKU's motion repeatedly substitutes its own version of events for the allegations." Opposition at 10. Plaintiff's "three examples" of "framing" do not support that argument.

*First*, Plaintiff objects to ALKU pointing out that the Amended Complaint conceded that ALKU had no other assignments available and thus failed to allege that ALKU could have done anything differently. *See* Opposition at 10. But Plaintiff repeatedly alleged as much in the Amended Complaint:

¶ 118: "Although ALKU remained Plaintiff's direct employer and could have reassigned him to another contract, ALKU had no other assignment available."

¶ 174: "Although ALKU remained Plaintiff's employer and retained the ability to assign Plaintiff to another available position or contract, ALKU had no other assignment

available. ManTech's removal therefore resulted in Plaintiff's loss of work, compensation, and employment benefits through ALKU."

¶ 224: "ALKU remained Plaintiff's employer following his removal from the CIA contract but had no other assignment available and did not place Plaintiff on another contract."

¶ 273: "Because ALKU had no other assignment available for Plaintiff, ALKU's implementation of ManTech's removal decision left Plaintiff without an active work assignment and resulted in Plaintiff's loss of work, compensation, and employment benefits through ALKU."

Moreover, Plaintiff conceded that "ALKU could not independently compel ManTech to permit Plaintiff to remain on the CIA contract…." Am. Compl. ¶ 223. Thus, as alleged by Plaintiff, ManTech decided to remove Plaintiff, ALKU had no choice but to follow that direction, and ALKU had no other appropriate assignment in which to place Plaintiff.

*Second*, Plaintiff takes issue with ALKU's reliance on ManTech's explanation that Plaintiff's removal was related to negative performance reviews. *See* Opposition at 10-11. But even if ManTech's underperformance explanation was untrue, as Plaintiff implies, ALKU did not discriminate against Plaintiff by accepting it. "[F]actual discrepancies about the underlying conduct are irrelevant because it is the *perception* of the decision maker that matters." *Duggan v. Sisters of Charity Providence Hospitals*, 663 F. Supp. 2d 456, 469 n.5 (D.S.C. 2009) (emphasis added). *Accord DeJarnette v. Corning Inc.*, 133 F.3d 293, 299-300 (4th Cir. 1998) (holding that a showing that employer's reason for an adverse employment decision was factually wrong is not sufficient to prove discrimination); *Benson v. Vaughn Industries LLC*, 450 F. Supp.3d 655, 669 (E.D.N.C. 2020) (noting that "'mere mistakes of fact are not evidence of unlawful discrimination.' After all, a '[p]retext is a lie, not merely a mistake'" (citations omitted and alterations in original)); *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 903 (4th Cir. 2017) (noting that "[i]f [plaintiff] was fired for misconduct she did not actually engage in, that is unfortunate, but a good-faith factual mistake is not the stuff of which Title VII violations are made" (citations omitted)). As set forth in

the Amended Complaint, ManTech alone directed Plaintiff's daily work, evaluated his performance, and held final authority over who stayed on its CIA contract. *See* Am. Compl. ¶¶ 24, 29, 172. Plaintiff admits ALKU "could not independently compel ManTech" to keep him and asked ALKU not to take his complaint to ManTech. Am. Compl. ¶¶ 214, 223. The reasons ManTech gave were ordinary business reasons within ManTech's control that ALKU had no means to second-guess, especially where the alleged incident occurred two months earlier.

*Third*, Plaintiff attempts to counter ALKU's observation that ManTech "conducted an investigation and at least one interview" by pointing to allegations that, by Plaintiff's own admission, show that Bentley questioned a "participant" in the incident. *See* Opposition at 11 (citing Am. Compl. ¶ 78). And while Plaintiff criticizes the "workplace unity" email,[3] its existence was among the factors that framed ALKU's decision of whether to consider actions above and beyond what ManTech already did.

At bottom, the law only requires ALKU to "take corrective actions within its control," which is precisely what it did. *Crump*, 2016 WL 901262, at *1-3 (citation omitted). Plaintiff alleged that "ALKU and ManTech were in constant communication regarding employees assigned to ManTech's contract," and that "ALKU and ManTech regularly communicated concerning personnel assigned to ManTech's contract, including matters affecting their performance and continued assignment to the contract." Am. Compl. ¶¶ 110-111. Thus, based on Plaintiff's own allegations, ALKU knew that (i) Plaintiff had complained about the video in May; (ii) ManTech had conducted an investigation; (iii) ManTech took corrective measures, including sending an

[3] *See* Am. Compl. ¶ 85 ("Upon information and belief, Giddens reported multiple incidents of racially offensive workplace conduct to SOC Lead Bentley. In response to the concerns raised, SOC Lead Bentley subsequently sent a generalized electronic message to all workplace ManTech-led CIA contract personnel regarding workplace unity.").

employee-wide email; and (iv) when Plaintiff made his report to ALKU in July, he did not want ALKU to communicate his complaint to ManTech. *See id.* ¶¶ 67-71, 85, 212-14. And then, when ManTech required his removal, ALKU had no other available placement for Plaintiff to go as an alternative. *See id.* ¶¶ 118, 214, 216, 220-24. Accordingly, ALKU took appropriate actions within its control.

Further, even if there were additional actions ALKU could potentially have taken, Plaintiff does not identify what they might be or allege how they would have led to a different result. Instead, Plaintiff points to discovery in hopes of curing this failure. *See* Opposition at 12-13. But where ALKU had no control over the removal decision or Plaintiff's day-to-day working conditions, *see* Am. Compl. ¶¶ 172, 223, there is nothing discoverable that could have led to a different result. Accordingly, because ALKU did what it could within its control and its actions were both appropriate and non-discriminatory, Counts II, III, and IV should be dismissed as to ALKU.

## II. The Amended Complaint Does Not Allege Sufficient Facts to Establish Race Discrimination by ALKU.

Section 1981 requires intentional discrimination and but-for causation. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 588 (4th Cir. 2015); *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022). Thus, as Plaintiff points out, ALKU's "liability turns on what *ALKU* knew and did." *See* Opposition at 14 (emphasis in original).

The Amended Complaint is primarily focused on ManTech's conduct.[4] Plaintiff reported the video incident to ManTech in May, and ALKU became aware of it; Plaintiff reported the incident to ALKU on July 11; ManTech later directed ALKU to remove Plaintiff from the contract;

---

[4] The Amended Complaint identifies ManTech personnel, not ALKU personnel, as the ones who allegedly discriminated intentionally. *See, e.g.*, Am. Compl. ¶¶ 33-39, 57-79, 90-113.

ALKU personnel said the decision came "out of the blue"; and ALKU collected badges and had no other work assignment available for Plaintiff. *See* Am. Compl. ¶¶ 67-71, 107-11, 117-23, 213-25. Those facts do not allege that ALKU believed ManTech's directive was racially motivated, that ALKU shared any improper motive, or that ALKU had a race-based reason of its own.[5]

Plaintiff again relies on the EEOC Guidance for the proposition that "[a] staffing firm that knowingly implements a client's discriminatory removal of its worker 'participates in the client's discrimination'…." Opposition at 14. But as explained above, Plaintiff overreads Example 11. The Guidance does not dilute § 1981's requirement of intent and but-for causation. In Example 11, the staffing firm *knows* the client is replacing the worker for a discriminatory reason and then accedes to that discriminatory request by replacing her with a new worker. Here, Plaintiff does not plead facts establishing that ManTech's directive was discriminatory or that ALKU sent a replacement worker. Although it came "out of the blue" to ALKU, Am. Compl. ¶¶ 123, 217, 220, that is not enough to establish that ALKU "knowingly participated" in intentional discrimination.

Finally, Plaintiff argues that the cases ALKU relied on involved only "bare assertions of bias." Opposition at 15. That is simply cherry-picking and ignores the cited cases involving race-related comments similar to the facts here that were found insufficient and dismissed. *See Blackford-Webb v. Glob. Scholars Acad.*, No. 1:24CV1071, 2025 WL 2532793, at *4-5, *7-8 (M.D.N.C. Sept. 3, 2025) (dismissing discrimination claim on a motion to dismiss despite allegations including plaintiff being told repeatedly "that she should go back to Jamaica" and threatened that if she did not she would be "shot in her head" by employees whose acts were not attributable to defendant), *rep. & rec. adopted by*, 2025 WL 4804676 (M.D.N.C. Sept. 22, 2025);

[5] As discussed above, even if ManTech's underperformance explanation was incorrect, as Plaintiff implies, ALKU did not discriminate against Plaintiff by accepting it.

*Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 192, 198 (E.D. Va. 2010) (dismissing discrimination claim at summary judgment despite facially-racial language used by employees).

**III. The Opposition Confirms that the Hostile Work Environment Claim Fails.**

As set forth in the Supporting Brief, to state a claim for § 1981 hostile work environment, a plaintiff must allege (a) unwelcome race-based conduct that is sufficiently severe or pervasive to alter employment conditions and create an abusive environment, and (b) a basis for imputing liability to the defendant. *See* Supporting Brief at 10 (citing *Williams v. HMSHost at Washington Dulles International*, No. 1:23cv1258, 2024 WL 3905725, at *4 (E.D. Va. Aug. 20, 2024)). Plaintiff's allegations against ALKU fail because neither requirement is established.

*First*, the conduct alleged in the Amended Complaint is not sufficiently severe or pervasive. *See McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 410 (4th Cir. 2022) (noting that "the question here is whether these events give rise to legal liability, not just whether they are reprehensible"). Plaintiff's claim rests on one racially offensive episode, a video shown by Adams. *See* Am. Compl. ¶ 59. Plaintiff attempts to get around that fact by claiming that the single episode in and of itself was sufficiently severe. *See* Opposition at 16 ("Like a racial epithet, [blackface's] use by a supervisor carries a severity that ordinary workplace slights do not." (citing *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015)). But *Boyer-Liberto* is nothing like this case. *Boyer-Liberto* involved a supervisor's repeated use of a racial epithet directed at and threatening of the plaintiff.[6] The two cases are not remotely comparable. In the instant case, the video was not shown to Plaintiff, aimed at him, or accompanied by any remark about him.

---

[6] *See Boyer-Liberto*, 786 F.3d at 270 ("Clubb was now loudly berating Liberto for walking away from her, at first following Liberto into the nightclub and then moving back to the server station. Upon Liberto's subsequent return to that area, Clubb finally proceeded to exit the nightclub into the kitchen. As she did so, Clubb threatened Liberto in words that included, '[I'm] going to get [you]' and '[I'm] going to make [you] sorry.' Clubb then concluded her threat by turning to look

Recognizing that one incident alone is plainly insufficient, Plaintiff then argues "the blackface display was not the whole of it." Opposition at 16. But the other allegations in the Amended Complaint are plainly insufficient to support a hostile work environment claim. The only other race-related remark, Lee's "Southside" comment, was not even directed at Plaintiff; in fact, Plaintiff learned about it secondhand. *See* Am. Compl. ¶¶ 39, 81-82. Branch Chief Washington's alleged record-keeping adds nothing either. The Amended Complaint alleges only that she "began maintaining records" of unspecified reports, without any dates. Am. Compl. ¶¶ 84-88.[7] The remaining (post-complaint) conduct is facially race-neutral: Adams "stopped communicating directly" with Plaintiff and routed requests through coworkers; Bentley asked him to "re-confirm his previous approval" for Linux training (with no allegation that he missed any); and Bentley directed questions to Plaintiff at shift turnover and stopped saying "Good morning." Am. Compl. ¶¶ 92-97, 99, 103-106.

In short, such allegations do not constitute the severe or pervasive conduct that creates a hostile work environment. *See* Supporting Brief at 12 (citing *Carroll v. Amazon Data Servs., Inc.*, No. 1:21-CV-01177, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022); *Gooding-Williams v. Fairfax Cnty. Sch. Bd.*, No. 1:18-CV-01177, 2019 WL 3268831, at *6 (E.D. Va. July 19, 2019)). Plaintiff's allegations – that he saw others watching and discussing a video and heard secondhand of a remark aimed at someone else – fall well short of the "nearly constant" conduct generally required, *Leonard v. Tenet*, No. 1:03CV1176, 2004 WL 3688406, at *9 (E.D. Va. June 30, 2004),

---

at Liberto and calling her either a 'damn porch monkey' or a 'dang porch monkey.'" (internal citations omitted)).

[7] That allegation cannot support the Opposition's assertion that "[a]ll of this occurred within roughly ten weeks" and that it was a "concentrated, escalating course of conduct." Opposition at 17.

and do not show the "repeated conduct" required for a hostile environment claim, *McIver*, 42 F.4th at 407-10.

*Second*, the imputation element fails as to ALKU. The alleged racial conduct occurred in a ManTech workplace involving ManTech-led or other non-ALKU subcontractor personnel. ALKU had no control over the alleged harassers or over the ManTech workplace conditions in which the alleged harassment occurred. Plaintiff nonetheless alleges that ALKU had actual knowledge no later than July 11, 2024, and took no corrective action. *See* Opposition at 18. Again, Plaintiff ignores his own request that ALKU not communicate the complaint to ManTech. *See* Am. Compl. ¶ 214. Plaintiff cannot plausibly fault ALKU for failing to immediately take the very action he asked ALKU not to take. Further, the Amended Complaint identifies no post-July 11 race-based harassment that ALKU could have stopped before ManTech removed Plaintiff on July 30. The post-complaint allegations were workplace acts (e.g., communication changes, a training dispute, and performance criticisms) by ManTech-led personnel, not ALKU. *See id.* ¶¶ 90-116. Plaintiff's allegations do not plausibly support § 1981 liability.

## IV. The Opposition Confirms that the Retaliation Claim Fails.

As set out in the Supporting Brief, a plaintiff asserting a retaliation claim must allege "the adverse action was causally connected to the protected activity." Supporting Brief at 12 (quoting *Mulgrew v. Prince William Cnty. Sch. Bd.*, No.: 1:22-CV-01311, 2023 WL 7222108, at *2 (E.D. Va. Nov. 2, 2023)). In the Opposition, Plaintiff argues that ALKU knew of his protected activity because he complained to ALKU on July 11, and he was removed 19 days later. *See* Opposition at 20. That is not enough.

In the Amended Complaint, Plaintiff alleges that, "[o]n July 30, 2024, less than three weeks after Plaintiff escalated his discrimination concerns to ALKU, ManTech exercised its authority to remove Plaintiff from the CIA contract." Am. Compl. ¶ 264. Plaintiff does not allege that ALKU

decided to remove him from the contract, recommended his removal, asked ManTech to remove him, supplied retaliatory information to ManTech, or had any other assignment available and withheld it because he complained. He alleges that ALKU implemented ManTech's directive and had no other assignment available. *Id.* ¶¶ 118, 222-25, 272-73. There simply is no but-for causation as to ALKU.

In addition, Plaintiff's 19-day temporal proximity argument does not establish that ALKU retaliated where the Amended Complaint alleges the decision came from ManTech, not ALKU.[8] Moreover, Plaintiff asked ALKU not to communicate the complaint to ManTech. *See* Am. Compl. ¶ 214. ALKU's alleged failure to override that request, and its later compliance with a client directive it allegedly viewed as unexplained, do not plausibly allege that ALKU acted "because of" Plaintiff's protected activity.

Finally, Plaintiff's "retaliatory hostile work environment" theory, Opposition at 21, fails for the reasons set forth above. Retaliatory hostile work environment claims are subject to the same "severe or pervasive" requirement as hostile work environment claims and are vulnerable to the same arguments of being conclusory, vague, and insufficient. *See Lee v. Korea Innovation Center*, No. 1:25-cv-635, 2026 WL 687183, at *13 (E.D. Va. Mar. 11, 2026); *Martin v. Stateside Associates, Inc.*, No. 1:23-cv-01076, 2026 WL 624486, at *11 (E.D. Va. Mar. 5, 2026) (noting that "the shunning of colleagues and unsatisfactory work assignment do not clear the high bar needed to meet the 'severe or pervasive element'" (citation omitted)); *Banks v. City of Virginia Beach*, No. 2:24-cv-0149, 2024 WL 4932727, at *9 (E.D. Va. Nov. 26, 2024) (finding that plaintiff "not

[8] Plaintiff's 19-day argument fails for an additional reason. Plaintiff alleges that ALKU and ManTech were in "constant communication" and "regularly communicated" about workers assigned to ManTech. Am. Compl. ¶¶ 110-11. Therefore, based on those allegations, ALKU knew about Plaintiff's complaint to ManTech in May, more than two months before ManTech asked that he be removed.

[being] allowed to attend a trainer's course" was not sufficiently severe or pervasive). There was no severe or pervasive conduct, especially after Plaintiff made his report to ALKU on July 11.

In sum, the pleaded purported retaliatory acts were undertaken by ManTech personnel or those for whom ManTech was responsible. The Amended Complaint identifies no ALKU conduct creating a retaliatory workplace environment. Count IV should be dismissed.

## V. The Amended Complaint Should Be Dismissed with Prejudice.

Plaintiff has had ample opportunity to set forth plausible claims, and if his already-amended claims are dismissed, Plaintiff should not be allowed to amend a second time and "unduly subject [ALKU] to the continued time and expense occasioned by [Plaintiff's] pleading failures." *U.S. ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451, 461 (4th Cir. 2013). *See also Dostert v. Crowley*, 394 F.2d 178, 178 (4th Cir. 1968) (per curiam) (affirming denial of leave to file a second amended complaint). Accordingly, Counts II, III, and IV should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above and in ALKU's Supporting Brief, the Court should dismiss all claims against ALKU (Counts II, III, and IV of Plaintiff's Amended Complaint) with prejudice.

Dated: November 23, 2026

Respectfully submitted,

By: */s/ Andrew K. Clark*
Counsel

Andrew K. Clark (VSB No. 45269)
HIRSCHLER FLEISCHER
A Professional Corporation
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
Telephone: (804) 771-9500
Facsimile: (804) 644-0957
E-mail: aclark@hirschlerlaw.com

Alexander P. Faig (VSB 96248)
HIRSCHLER FLEISCHER
A Professional Corporation
1676 International Drive, Suite 1350
Tysons, Virginia 22120
Telephone: (703) 584-8900
Facsimile: (703) 584-8901
Email: afaig@hirschlerlaw.com

Matthew C. Moschella (Admitted *Pro Hac Vice*)
Luke E. Colomey (Admitted *Pro Hac Vice*)
SHERIN AND LODGEN LLP
One Lincoln Street, 14th Floor
Boston, Massachusetts 02111
(617) 646-2000
mcmoschella@sherin.com
lecolomey@sherin.com

*Counsel for Defendant ALKU Technologies, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2026, the foregoing Defendant ALKU Technologies, LLC's Reply in Support of Its Motion to Dismiss Plaintiff's Amended Complaint was filed electronically with the Clerk of this Court using the CM/ECF system, which will send a notice of electronic filing to all registered counsel of record.

Respectfully submitted,

*/s/ Andrew K. Clark*

Andrew K. Clark, Esq. (VSB No. 45269)
HIRSCHLER FLEISCHER
A Professional Corporation
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
Telephone: (804) 771-9500
Facsimile: (804) 644-0957
E-mail: aclark@hirschlerlaw.com

*Counsel for Defendant ALKU Technologies, LLC*

4898-7380-1701